**9**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:    (916) 485-1111
Facsimile:    (916) 485-1111

Proposed Attorney for SCRIPPS TWO, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>**SCRIPPS TWO, LLC**<br><br>Tax ID / EIN: 92-0622957<br><br>      Debtor, | Case No. 2025-26371-A-11<br>Chapter 11<br>DCN: GEL-1<br><br>**MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION; SCHEDULING DEADLINES RELATING TO A FINAL HEARING ON USE OF CASH COLLATERAL**<br><br>Date:     November 20, 2025<br>Time:     10:00 a.m.<br>Location:  501 I Street, 7th Floor,<br>           Courtroom 28, Dept. A<br>           Sacramento, CA<br><br>Judge:    Honorable Frederick E. Clement |

SCRIPPS TWO, LLC, a California limited liability corporation, the Debtor and Debtor-in-Possession (the "Debtor") by and through their proposed attorney, Gabriel E. Liberman, respectfully requests an order authorizing it to use "cash collateral" in form of rental income which may be used to generate post-petition proceeds (the "Cash Collateral"), and grant adequate protection to secured creditors, Red Oak Capital Holdings, LLC ("Red Oak") and California Statewide Communities

Development Authority ("CSCDA") and approve Debtors' use of cash collateral for the payment of the operating expenses as set forth in the budget attached hereto as **Exhibit "A"**, that may have an interest in the Cash Collateral (the "Motion"), pursuant to Bankruptcy Code §§ 363(c)(2)(A) and 105(a), as well as Rule 4001-1(c) of the Local Rules of Bankruptcy Practice for the Eastern District of California, and respectfully represents as follows:

## I.  Factual Background

1.  On November 12, 2025 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter[1] 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "Chapter 11 Case"). A trustee has not been appointed, and no unsecured creditor's committee has been appointed.

2.  Debtor is a California limited liability corporation formed on October 4, 2022, and is Majority owned and managed by Jeffrey Berger, who has more than 50 years of experience in owning and operating commercial real estate. Minority members are Melinda Walker and Kenneth Karmolinski.

3.  Debtor is a real estate holding company and holds two parcels of property. Its main asset, is commonly known as Campus Commons Medical Dental Building located at 2 Scripps Drive, Sacramento CA 95825 (the "Property"). The Property is a three-story office building built in 1973 with on-site parking for 201 vehicles and has a gross building area of 36,109 square feet and sits on a 1.93 acre lot. The Property was appraised as of October 13, 2025, with a current fair market value at $17,120,000. A true and accurate copy of the appraisal report is attached hereto as **Exhibit "B"**.

4.  The Property is currently 80% occupied with 15 active non-residential leases, primary to medical offices and gross monthly of $77,000.00. A true and accurate copy of October 2025's rent roll is attached hereto as **Exhibit "C".**

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "LBR" shall refer to the Local Rules of Practice for the United States Bankruptcy Court for the Eastern District of California

5.   The Debtor also holds title to an adjacent entitled parcel of land (the "Vacant Lot"). The Vacant Lot is 3,000 square feet and zoned for multi-purpose housing and has been pre-approved by the City of Sacramento for construction of a nine unit multi-family development. The Vacant Lot was appraised as of October 13, 2025, with a fair market value of $600,000. See Exhibit B.

6.   The Debtor's managing member, Jeffrey Berger, has a long history with the Property and has previously owned it; first back in the 1980's, then sold it around 1995, then again in 2014, then sold it in 2017. In early 2022, the Property was extensively damaged in a fire, caused by a homeless person(s), causing more than $10 million in damage. The previous owners did not want to deal with rehabbing the building and in November 2022, Mr. Berger purchased it a third time for $3.575 million with the goal of restoring the Property.

7.   Debtor faced significant challenges with renovating the Property, where in Debtor believed the funds obtained from Red Oak's initial $9 million dollar loan to cover the purchase of the Property and renovation costs were insufficient.  During the course of construction costs went up significantly due to rising prices of both material and labor, as well as some unforeseen damage discovered.  Debtor also secured a C-PACE loan for approximately $1.9 million to assist in the additional renovation caused, but was still financially short to complete renovations. Approximately 6,000 square feet are still unrenovated, with an estimated cost to complete of $500,000 to $600,000.

8.   Red Oak agreed to provide these additional funds and forebear on a foreclosing on the Property. The space has a prospective tenant, and the Debtor was pledging additional collateral to secure these funds. A third-party lender of the collateral would not consent to the pledge. Debtor offered other collateral owned by Jeff Beger for such pledge, in which that primary lender consent had already been received. Red Oak reversed its position and decided to move forward with the foreclosure sale for

November 13, 2025. As a result, the Debtor filed the instant Chapter 11 Case to stay the foreclosure and protect its assets.

9. Debtor anticipates using its own assets and the aforementioned additional collateral to secure the funds to complete the buildout of its new tenant. The building would then be 100% leased and could be sold to pay off all creditors.

## II. Motion Background

10. In the ordinary course of the business, it will be necessary for Debtor to use its rental income and other personal property necessary in which various creditors assert a security interest, as discussed below.

11. As relevant to cash collateral issues, Debtor believes that the cash in its operating accounts, approximately $20,414.00, as of the Petition Date, held in Citibank N.A. account number XXXXX-7621 is unsecured because no person other than the Debtor and the banking institutions have a control agreement or possession of the accounts. The collateral constituting Cash Collateral is its rental income of approximately $96,500 per month from its tenants.

12. This Motion seeks to approve use of Cash Collateral as of the Petition Date. Debtor request that this Court authorize and approve Debtors' use of cash collateral for the payment of the operating expenses as set forth in the budget attached hereto as Exhibit A.

## III. Security Interests Asserted

13. The following table summarizes the positions of creditors that may assert a lien against Debtor's Cash Collateral:

///

4

Table 1:

| No. | Recorded | Creditor | Claim Amount | Proposed Adequate Protection Payment |
|---|---|---|---|---|
| 1 | 11/30/2022 | Red Oak Capital Holdings, LLC | $10,961,939 | $5,000.00 |
| 2 | | California Statewide Communities | $1,858,513.70 | $4,837.00 |
| | | | $14,621,765.06 | $9,837.00 |

14. On or about November 30, 2022, Red Oak and Debtor entered into that certain loan transaction (the "Loan") whereby Debtor agreed to borrow, and Red Oak agreed to loan, specified sums to Debtor, as evidenced by that certain Loan Agreement (dated on or about November 22, 2025 between Red Oak and Debtor (the "Loan Agreement").

15. In connection with the Loan, Debtor made, executed, and delivered that certain Commercial Loan and Security Agreement (the "Note") on or about November 22, 2025, wherein Debtor agreed to repay the Loan in the principal amount of $9,000,000, plus interest, on the terms and conditions stated therein. To secure its obligations to Red Oak under the Loan Agreement and the Note, Debtor executed and delivered that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, Assignment of Contracts and Plans, and Fixture Filing, which was recorded on November 30, 2025, in the Official Records of Sacramento County, California, as Document No. 2022-11301168 (the "Deed of Trust"). The Debtor believes Red Oak has a balance of $10,961,939.82 as of Petition Date. No proof of claim has been filed as of preparing this Motion.

16. California Statewide Communities Development Authority ("CSCDA"), a secured lender, holds a senior priority security interest, wherein the Debtor entered into an assessment contract with CSCDA (the "Assessment Contract") under the CSCDA Open PACE Program. The PACE Assessment Lien's priority shares the same statutory priority status as general municipal taxes—prior to and superior

to all other liens, claims, and encumbrances. *See* Cal. Sts. & High. Code § 5898.30 (incorporating California Government Code § 53935 as applicable to PACE assessments); Cal. Gov't Code § 53935. The Debtor believes CSCDA has a balance of $1,858,513.70 as of Petition Date. No proof of claim has been filed as of preparing this Motion.

**IV**.   **<u>Relief Requested</u>**

17. Debtor will be proposing a plan of reorganization but cannot determine with certainty the timetable for filing his plan of reorganization. Debtor seeks authorization to use Cash Collateral from the Petition Date through June 30, 2026. However, in order to avoid immediate and irreparable harm, pending a final hearing on the Motion, Debtor requests interim authorization to use Cash Collateral from the Petition Date through December 31, 2025, with a 15% variance as set forth in the budget attached as **Exhibit "A"** (the "Interim Budget" or "Interim Period") to the Declaration of Jeffrey Berger in support of the Motion. In the Interim Budget, Debtor requests interim authorization use up to $41,457.00.

18. The Interim Period excludes salary payments to Debtor's officer's and Debtor's management company, University Capital Management, owned by Jeffrey Berger, as follows:

Table 2:

| Name | Relationship to Debtor | Position | Annual Gross Salary | Other Benefits |
|---|---|---|---|---|
| Jeffrey Berger | Managing member, majority member | N/A | $0.00 | None |
| Melinda Walker | Member, minority member | N/A | $0.00 | None |
| Kenneth Karmolinski | Member, minority member | N/A | $0.00 | None |
| University Capital Management | Construction and property management | | 4.0% management fee of gross rents received, est. $3,000-3,200/month | None |

19. For these and the other reasons discussed below, the Debtor is requesting entry of an order

6

approving the Cash Collateral Motion and to enter an order substantially the same form and substance as the proposed form of order attached hereto as **Exhibit "D"** (the "Interim Order").

20. Bankruptcy Rule 4001(b)(2) allows the Court to conduct a preliminary hearing on a motion for authority to use cash collateral on less than fourteen (14) days' notice and to authorize use of cash collateral if necessary to avoid irreparable harm to the estate pending a final hearing. Fed. R. Bankr. Proc. 4001(b)(2). The Debtor is providing fourteen (14) days' notice and also argues that it must continue to pay vendors and a host of other obligations necessary to their business operations. The ability to continue business operations is essential to the Debtor's ability to preserve the value of the Debtors business and its relations with their customers.

### V.     Adequate Protection Offered by Debtor

21. Debtor will provide Red Oak and CSCDA  (collectively referred hereafter as the "Secured Creditors") with adequate protection by:

    a.  Replacement Lien. Pursuant to Bankruptcy Code sections 361, and 363(e) and except as to otherwise validly perfected and unavoidable liens existing as of the Petition Date, Debtor grants Secured Creditors a replacement security interest and lien in the prepetition and postpetition assets of the Debtor to the same extent and priority granted Secured Creditors pursuant to the Prepetition Loan Documents (the "Adequate Protection Replacement Lien"). The Adequate Protection Replacement Lien shall be automatically perfected without the need for any additional filings or notices.

    For the avoidance of doubt, nothing in this Interim Order shall encumber any causes of action available under Chapter 5 of the Bankruptcy Code.

    b.  Monthly Payments: Debtor shall pay the Secured Creditors starting November 2025 monthly payments as identified in Table 1 above.

7

# VI.    Compliance with Local Rule 4001-1(c)

22. The Debtor makes the following disclosures in accordance with Local Rule 4001-1(c) regarding the relief requested in this Motion:

Table 3:

| Sub. | Type of Provision | Requested Relief? |
|------|-------------------|-------------------|
| A | Cross-Collateralization | No |
| B | Binding Findings of Fact by Parties | No |
| C | Binding Findings of Fact against Non-Parties | No |
| D | Waivers of 11 U.S.C. § 506(c) | No |
| E | Limitations on Debtor's Rights in Chapter 11 | No |
| F | Releases of Secured Creditor Liability for Torts or Breaches | No |
| G | Waivers of Avoidance Actions | No |
| H | Automatic Relief from the Automatic Stay upon Default | No |
| I | Waivers of the Procedural Requirements for Foreclosure | No |
| J | Adequate Protection Provisions that Create Liens on Claims | No |
| K | Waiver of the Debtor's Right to Seek Non-Consensual C. Coll. | No |
| L | Findings of Fact on Matters Extraneous to the Approval Process | No |

# VII.   Prayer for Relief

23. Accordingly, the Debtor submits that they would suffer irreparable harm to their business operations if not permitted immediate use of cash collateral, and so they request that the Court approve use of the foregoing amounts on an interim basis. The Motion also requests that at the initial hearing the Court schedule a further hearing on to consider final approval of the Cash Collateral Motion, the grant of adequate protection to Secured Creditors, and any further proceedings concerning the grant of final authority to use cash collateral.

**WHEREFOR**E, Debtor prays for an order:

1.  Authorizing interim cash collateral use starting on the Petition Date and continuing through December 31, 2025 in the total amount as set forth in the Budget attached as Exhibit A with a 15% variance;

2.  Scheduling a hearing for final approval of the Cash Collateral;

3.  Granting adequate protection to the Secured Creditors in the form of replacement liens; and

4.  For such other and further relief as is just and proper.

Dated: November 17, 2025

                                      LAW OFFICES OF GABRIEL E. LIBERMAN, APC

                           By:    */s/* Gabriel E. Liberman
                                     Gabriel E. Liberman
                                     Proposed Attorney for Debtor-in-Possession