**7**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:     (916) 485-1111
Facsimile:      (916) 485-1111

Proposed Attorney for SCRIPPS TWO, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>**SCRIPPS TWO, LLC**<br><br>Tax ID / EIN: 92-0622957<br><br><br>                    Debtor, | Case No. 2025-26371-A-11<br>Chapter 11<br>DCN: GEL-1<br><br>**DECLARATION OF JEFFREY BERGER IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION, FIRST DAY MOTION: (1) CASH COLLATERAL MOTION**<br><br>Date:        November 20, 2025<br>Time:        10:00 a.m.<br>Location:   501 I Street, 7th Floor,<br>                 Courtroom 28, Dept. A<br>                 Sacramento, CA<br><br>Judge:       Honorable Frederick E. Clement |

I, Jeffrey Berger hereby declare as follows:

1.  I am over the age of 18 and am mentally competent and I make this declaration regarding *Debtor's Motion To Use Cash Collateral And Grant Adequate Protection; Scheduling Deadlines Relating To A Final Hearing On Use Of Cash Collateral* (the "Cash Collateral Motion").

2.  I am the managing member and majority shareholder of SCRIPPS TWO, LLC the debtor in

1

possession (the "Debtor").

3.   In my capacity as Debtor's managing member, I am familiar with Debtor's daily business, operations, and financial affairs. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

## BACKGROUND OF THE DEBTOR

4.   On November 12, 2025 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter[1] 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "Chapter 11 Case"). A trustee has not been appointed, and no unsecured creditor's committee has been appointed.

5.   Debtor is a California limited liability corporation formed on October 4, 2022, and I am the majority owner and manager. I have more than 50 years of experience in owning and operating commercial real estate. Minority members are Melinda Walker and Kenneth Karmolinski.

6.   Debtor is a real estate holding company and holds two parcels of property. Its main asset is commonly known as Campus Commons Medical Dental Building located at 2 Scripps Drive, Sacramento CA 95825 (the "Property"). The Property a three-story office building built in 1973 with on-site parking for 201 vehicles and has a gross building area of 36,109 square feet and sits on a 1.93 acre lot. The Property was appraised as of October 13, 2025, with a current fair market value at $17,120,000. A true and accurate copy of the appraisal report is attached hereto as **Exhibit B**.

7.   The Property is currently 80% occupied with 15 active non-residential leases, primary to medical

---

[1]  All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "LBR" shall refer to the Local Rules of Practice for the United States Bankruptcy Court for the Eastern District of California

offices and gross monthly of $77,000.00.

8.   The Debtor also holds title to an adjacent entitled parcel of land (the "Vacant Lot"). The Vacant Lot is 3,000 square feet and zoned for multi-purpose housing and has been pre-approved by the City of Sacramento for construction of a nine-unit multi-family development. The Vacant Lot was appraised as of October 13, 2025, with a fair market value of $600,000. See Exhibit B.

9.   I have a long history with the Property and have previously owned it, first back in the 1980's, then sold it around 1995, then again in 2014, then sold it in 2017. In early 2022, the Property was extensively damaged in a fire, caused by a homeless person(s), causing more than $10 million in damage. The previous owners did not want to deal with rehabbing the building and in November 2022, I purchased it a third time for $3.575 million with the goal of restoring the Property.

10. Debtor faced significant challenges with renovating the Property, where in Debtor believed the funds obtained from Red Oak's initial $9 million dollar loan to cover the purchase of the Property and renovation costs were insufficient.  During the course of construction costs went up significantly due to rising prices of both material and labor, as well as some unforeseen damage discovered.  Debtor also secured a C-PACE loan for approximately $1.9 million to assist in the additional renovation caused, but was still financially short to complete renovations. Approximately 6,000 square feet are still unrenovated, with an estimated cost to complete of $500,000 to $600,000.

11. Red Oak agreed to provide these additional funds and forebear on a foreclosing on the Property. The space has a prospective tenant, and the Debtor was pledging additional collateral to secure these funds. A third-party lender of the collateral would not consent to the pledge. Debtor offered other collateral that I owned for such pledge, in which that primary lender consent had already been received. Red Oak reversed its position and decided to move forward with the foreclosure sale for November 13,

2025. As a result, the Debtor filed the instant Chapter 11 Case to stay the foreclosure and protect its assets.

12. Debtor anticipates using its own assets and the aforementioned additional collateral to secure the funds to complete the buildout of its new tenant. The building would then be 100% leased and could be sold to pay off all creditors.

## **Cash Collateral Motion Background**

13. In the ordinary course of the business, it will be necessary for Debtor to use its rental income and other personal property necessary in which various creditors assert a security interest, as discussed below.

14. As relevant to cash collateral issues, Debtor believes that the cash in its operating accounts, approximately $20,414.00, as of the Petition Date, held in Citibank N.A. account number XXXXX-7621 is unsecured because no person other than the Debtor and the banking institutions have a control agreement or possession of the accounts. The collateral constituting Cash Collateral is its rental income of approximately $96,500 per month from its tenants.

15. This Motion seeks to approve use of Cash Collateral as of the Petition Date. Debtor request that this Court authorize and approve Debtors' use of cash collateral for the payment of the operating expenses as set forth in the budget attached hereto as Exhibit A.

16. The following table summarizes the positions of creditors that may assert a lien against Debtor's Cash Collateral:

///

///

Table 1:

| No. | Recorded | Creditor | Claim Amount | Proposed Adequate Protection Payment |
|-----|----------|----------|--------------|--------------------------------------|
| 1 | 11/30/2022 | Red Oak Capital Holdings, LLC | $10,961,939 | $5,000.00 |
| 2 |  | California Statewide Communities Development Authority | $1,858,513.70 | $4,837.00 |
|  |  |  | $14,621,765.06 | $9,837.00 |

17. On or about November 30, 2022, Red Oak and Debtor entered into that certain loan transaction (the "Loan") whereby Debtor agreed to borrow, and Red Oak agreed to loan, specified sums to Debtor, as evidenced by that certain Loan Agreement (dated on or about November 22, 2025 between Red Oak and Debtor (the "Loan Agreement").

18. In connection with the Loan, Debtor made, executed, and delivered that certain Commercial Loan and Security Agreement (the "Note") on or about November 22, 2025, wherein Debtor agreed to repay the Loan in the principal amount of $9,000,000, plus interest, on the terms and conditions stated therein. To secure its obligations to Red Oak under the Loan Agreement and the Note, Debtor executed and delivered that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, Assignment of Contracts and Plans, and Fixture Filing, which was recorded on November 30, 2025, in the Official Records of Sacramento County, California, as Document No. 2022-11301168 (the "Deed of Trust"). The Debtor believes Red Oak has a balance of $10,961,939.82 as of Petition Date. No proof of claim has been filed as of preparing this Motion.

19. California Statewide Communities Development Authority ("CSCDA"), a secured lender, holds a senior priority security interest, wherein the Debtor entered into an assessment contract with CSCDA (the "Assessment Contract") under the CSCDA Open PACE Program. The PACE Assessment Lien's priority shares the same statutory priority status as general municipal taxes—prior to and superior

to all other liens, claims, and encumbrances. *See* Cal. Sts. & High. Code § 5898.30 (incorporating California Government Code § 53935 as applicable to PACE assessments); Cal. Gov't Code § 53935. The Debtor believes CSCDA has a balance of $1,858,513.70 as of Petition Date. No proof of claim has been filed as of preparing this Motion.

 20. Debtor will be proposing a plan of reorganization but cannot determine with certainty the timetable for filing his plan of reorganization. Debtor seeks authorization to use Cash Collateral from the Petition Date through June 30, 2026. However, in order to avoid immediate and irreparable harm, pending a final hearing on the Motion, Debtor requests interim authorization to use Cash Collateral from the Petition Date through December 31, 2025, with a 15% variance as set forth in the budget attached as **Exhibit "A"** (the "Interim Budget" or "Interim Period") and requests interim authorization use up to $41,457.00.

 21. The Interim Period excludes salary payments to Debtor's officer's and Debtor's management company, University Capital Management, which I own and manage:

Table 2:

| Name | Relationship to Debtor | Position | Annual Gross Salary | Other Benefits |
|------|------------------------|----------|---------------------|----------------|
| Jeffrey Berger | Managing member, majority member | N/A | $0.00 | None |
| Melinda Walker | Member, minority member | N/A | $0.00 | None |
| Kenneth Karmolinski | Member, minority member | N/A | $0.00 | None |
| University Capital Management | Construction and property management | | 4.0% management fee of gross rents received, est. $3,000-3,200/month | None |

 22. I join the Debtor and submit that without cash collateral use Debtor would suffer irreparable harm

to their business operations if not permitted immediate use of cash collateral, and so they request that the Court approve use of the foregoing amounts. The Cash Collateral Motion also requests that at the initial hearing the Court schedule a further hearing to consider final approval of the Cash Collateral Motion, the grant of adequate protection to Creditors, and any further proceedings concerning the grant of final authority to use cash collateral.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this 12th day of November, 2025

By:   /s/ Jeffrey Berger
      Jeffrey Berger
      Managing member