**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No. 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:　　(310) 576-2100
Facsimile:　　　(310) 576-2200

William J. Easley (Pro Hac Vice forthcoming)
*will.easley@bclplaw.com*
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone:　　(816) 374-3200
Facsimile:　　　(816) 374-3300

*Attorneys for ROIOF SERIES, a series of*
*RED OAK CAPITAL FUND SERIES, LLC*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>Scripps Two, LLC,<br><br>　　　　　　　Debtor. | Case No. 25-26371-A-11<br>Chapter 11<br>DCN: GEL-1<br><br>**ROIOF SERIES, A SERIES OF RED OAK CAPITAL FUND SERIES, LLC's OBJECTION TO DEBTOR'S MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION; SCHEDULING DEADLINES RELATING TO A FINAL HEARING ON USE OF CASH COLLATERAL [ECF 6].**<br><br>Date:　　December 15, 2025<br>Time:　　9:00 a.m.<br>Place:　　501 I Street, 7th Floor<br>　　　　　Courtroom 28, Dept. A<br>　　　　　Sacramento, CA<br><br>Judge: Honorable Frederick E. Clement |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1　　　　Creditor ROIOF Series, a series of Red Oak Capital Fund Series, LLC ("Red Oak") objects

2　to Debtor Scripps Two, LLC's ("Debtor") *Motion to Use Cash Collateral and Grant Adequate*

3　*Protection; Scheduling Deadlines Relating to a Final Hearing on Use of Cash Collateral* [ECF 6]

4　(the "Cash Collateral Motion"), which was granted on an expedited and interim basis on November

5　20, 2025, (the "Interim Order") and is scheduled for consideration on a final basis on December 15,

6　2025 at 9:00 a.m. (the "Final Hearing") and additionally asks that Debtor be required to segregate

7　the rents to the extent it is not already doing so pursuant to 11 U.S.C. § 363(c)(4). Red Oak does not

8　object to the Court's resolution of disputed material factual issues pursuant to Fed. R. Civ. P. 43(c),

9　as incorporated by Fed. R. Bankr. P. 9017. In support of this objection, Red Oak states as follows:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

1

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.   RELEVANT BACKGROUND ................................................................................ 2

   A.   The Loan Documents Relevant to the Cash Collateral. ......................................... 2

   B.   Assignments of the Loan Documents. ................................................................... 3

   C.   The Defaults. ........................................................................................................ 4

   D.   The Filing of the Present Case and Cash Collateral Motion. ................................. 5

III.   ARGUMENT ....................................................................................................... 7

   A.   Red Oak's Perfected Security Interest in Rents and the Need for Stringent Protections ...... 7

     1.   The Proposed Replacement Liens and Payment Fail to Provide Adequate Protection ............................................................................................... 8

     2.   Purported Replacement Liens Offer No Additional Security .................................... 8

     3.   Proposed Periodic Payments Are Grossly Inadequate ............................................. 9

   B.   The Alleged Equity Cushion Is Insufficient and Rapidly Declining .................................. 10

     1.   The Appraisal's Flawed Assumptions Render Its Valuation Unreliable ................. 11

     2.   More Realistic Valuation Demonstrates a Diminishing and Insufficient Equity Cushion ............................................................................................... 13

   C.   Adequate Protection Requires Increased Payments and Robust Financial Controls ........... 14

IV.   RESERVATION OF RIGHTS ............................................................................ 15

V.   CONCLUSION .................................................................................................. 16

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 354 E. 66th St. Realty Corp.*,
  177 B.R. 776 (Bankr. E.D.N.Y. 1995) ..................................................................................15

*In re Billman*,
  No. 19-90989-E-7, 2020 WL 3256808 (Bankr. E.D. Cal. June 12, 2020) .........................9, 11

*In re Buttermilk Towne Ctr., LLC*,
  442 B.R. 558 (B.A.P. 6th Cir. 2010) ........................................................................................9

*In re Butts Farming Ass'n*,
  No. 83-05174, 1986 WL 713552 (Bankr. D.N.D. Jan. 7, 1986) ..............................................11

*In re Capitol Station 65*, LLC,
  No. 17-23627-B-11, 2018 WL 333863 (Bankr. E.D. Cal. Jan. 8, 2018) .................................10

*In re Countryside Bowling Ctr., Inc.*,
  203 B.R. 765 (Bankr. M.D. Fla. 1996) ......................................................................................8

*In re Dev., Inc.*,
  36 B.R. 998 (Bankr. D. Haw. 1984) ..........................................................................................9

*In re GOCO Realty Fund I*,
  151 B.R. 241 (Bankr. N.D. Cal. 1993) ......................................................................................7

*In re Holt*,
  No. 09-62439-13, 2010 WL 3294693 (Bankr. D. Mont. Aug. 20, 2010)................................10

*In re Mellor*,
  734 F.2d 1396 (9th Cir. 1984) .................................................................................................10

*Pena v. Manfredo*,
  2013 WL 4817581 (E.D. Cal. Sept. 6, 2013), aff'd, 582 F. App'x 744 (9th Cir.
  2014) ...........................................................................................................................................7

*Matter of Plaza Fam. P'ship*,
  95 B.R. 166 (E.D. Cal. 1989)......................................................................................................8

*Putnal v. Suntrust Bank*,
  489 B.R. 285 (Bankr. M.D. Ga. Mar. 28, 2013) .......................................................................9

*In re Scottsdale Medical Pavilion*,
  159 B.R. 295 (B.A.P. 9th Cir. 1993)..........................................................................................8

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

*In re Sharon Steel Corp.*,
    159 B.R. 165 (Bankr. W.D. Pa. 1993) ...................................................................................9

*Wolf v. FirstMerit Bank, N.A.*,
    535 B.R. 772 (N.D. Ill. 2015) ............................................................................................9

**Federal Statutes**

11 U.S.C.
    § 361.....................................................................................................................8, 9
    § 363(c)(4) ...............................................................................................................7
    § 363(p)(1) ...............................................................................................................8
    § 506(b).....................................................................................................................9

**California Statutes**

Cal. Civ. Code
    §§ 9315(a)(2) ...........................................................................................................7
    §§ 9315(d)(2) ...........................................................................................................7

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

# I.  PRELIMINARY STATEMENT

This case presents a textbook example of why the Bankruptcy Code requires strict protection for secured creditors when a debtor seeks to use cash collateral. Despite having received over $10.9 million in loan proceeds and nearly three years to complete repairs, Debtor Scripps Two, LLC ("Debtor") has failed to restore the Property, defaulted on its obligations to both Red Oak and the C-PACE lender, and allowed significant property tax delinquencies to accrue. Now, on the eve of foreclosure, Debtor asks this Court for permission to use the very rents that secure Red Oak's claim - offering only inadequate protection in return and relying on projections and valuations that are unsupported by the record and contradicted by Debtor's own admissions.

Red Oak does not object to the use of cash collateral in principle, but it cannot consent to a process that will further erode its collateral position and leave it worse off than if it were permitted to exercise its state law remedies. The evidence demonstrates that the equity cushion, if any, is minimal and rapidly declining due to ongoing accrual of interest, fees, senior liens, and unpaid taxes. Debtor's proposed adequate protection is illusory: replacement liens on already encumbered rents provide no real security, and the proposed payments fall far short of covering even the interest accruing on Red Oak's claim, let alone the mounting obligations to senior creditors and taxing authorities.

The Bankruptcy Code requires that a secured creditor's interest be protected against diminution in value. Here, Debtor's history of missed deadlines, budget overruns, and failure to provide basic financial transparency underscores the risk that further use of cash collateral will only deepen the shortfall. Red Oak respectfully submits that the Court should deny Debtor's request to use cash collateral, or, at a minimum, impose strict conditions - including full interest payments, robust financial reporting, and meaningful limitations on expenditures - to ensure that Red Oak's interests are not further prejudiced during the pendency of this case. Anything less would contravene the fundamental protections afforded to secured creditors under the Bankruptcy Code.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## II.    RELEVANT BACKGROUND

### A.    The Loan Documents Relevant to the Cash Collateral.

1.    On November 28, 2022, Debtor and Red Oak Capital Holdings, LLC ("Original Lender") entered into a Commercial Loan and Security Agreement (as amended, the "Loan Agreement") which, among other things, set forth the terms upon which Original Lender would loan approximately $9,000,000 (the "Loan") to Debtor. Declaration of Ryan Anderson (the "Anderson Dec.") at ¶ 3, Exh. A.

2.    The Loan is evidenced by a Secured Promissory Note dated November 28, 2022, in the original principal amount of $9,000,000.00 that was executed by Debtor and delivered to Original Lender (the "Note"). Anderson Dec. at ¶ 4, Exh. B.

3.    Repayment of the Note is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement, and Fixture Filing dated November 30, 2022 (the "Deed of Trust") recorded in the Sacramento, California Register of Deeds on November 30, 2022 in Volume 2022 at page 11301168 which granted Original Lender a security interest in the real property commonly known as 2 Scripps Dr. Sacramento, California 95825 and more particularly described in the Deed of Trust (the "Property"). Anderson Dec. at ¶ 5, Exh. C.

4.    The Deed of Trust additionally granted Original Lender a security interest in, among other things, the rents generated by the Property ("Rents", and collectively with the Property and all other real and personal property interests of Debtor pledged to repay the Loan, the "Collateral"). Anderson Dec. at ¶ 6.

5.    Original Lender's security interest in the Collateral was further perfected by a UCC-1 submitted in the California Secretary of State's UCC filing system on December 1, 2022, as File Number U220247926435 (the "UCC-1"). Anderson Dec. at ¶ 7, Exh. D.

6.    As additional security for the repayment of the Note, Debtor executed a Cash Management Agreement dated November 30, 2022 ("Cash Management Agreement") which, among other things, provided that upon certain events specified in the Loan Agreement, including

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

but not limited to an event of default, Debtor would be required to establish a cash management account at a designated bank and deposit the Rents into this account. Anderson Dec. at ¶ 8, Exh. E.

7.    Collectively, the Loan Agreement, Note, Deed of Trust, Cash Management Agreement and all other documents and instruments executed in connection with the Loan, as they each may be amended, are the "Loan Documents".

**B.    Assignments of the Loan Documents.**

8.    The Loan Documents were subsequently assigned to Red Oak Income Opportunity Fund LLC ("ROIOF") by virtue of the following documents and instruments:

  A.  An allonge to the Note dated December 9, 2022, executed by Original Lender in favor of ROIOF.

  B.  An Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing dated December 9, 2022, (the "DOT Assignment") executed by Original Lender in favor of ROIOF and recorded in the Sacramento, California Register of Deeds on January 3, 2023, in Volume 2023 at page 011030456.

  C.  A UCC-3 Financing Statement Amendment in favor of ROIOF submitted in the California Secretary of State's UCC filing system on January 3, 2023, as File Number U230000409118 (the "UCC-3").

  D.  An Assignment of Loan Documents dated December 9, 2022, executed by Original Lender which, among other things, assigned the Loan Agreement, Note, Cash Management Agreement, UCC-1, Deed of Trust, and all other documents and instruments related to or evidencing the Loan to ROIOF (the "General Assignment").

Anderson Dec. at ¶ 10(A)-(D); Exhs. B, F, G and H.

9.    Red Oak gained an interest in each of the Loan Documents by virtue of its merger with ROIOF on October 5, 2023, and designated the Loan as part of its ROIOF Series. Anderson Dec. at ¶ 11, Exh. I.

10.    On August 16, 2024, the Original Loan Agreement was amended pursuant to a First Amendment to Loan Agreement (the "First Amendment to Loan Agreement") which, among other things, authorized Debtor to obtain the C-PACE Loan from the California Statewide Communities Development Authority ("C-PACE Lender"). Anderson Dec. at ¶ 12; Exh. J.

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

1　　**C.　　The Defaults.**

2　　11.　　Pursuant to the terms of the Loan Agreement, Debtor agreed, among other things, to

3 pay interest on the Loan on the first of each month until the amounts owed under the Loan were paid

4 in full. Anderson Dec. at ¶ 13; Exh. B at Article 1.

5　　12.　　Debtor additionally agreed to pay the full amounts owed under the terms of the Loan

6 Documents on or before November 30, 2024, unless otherwise extended pursuant to the terms of the

7 Loan Agreement ("Maturity Date"). Anderson Dec. at ¶ 14; Exh. A at § 2.8; p. 112.

8　　13.　　The First Amendment to Loan Agreement also required, among other things, that

9 Debtor remain in compliance with the terms of the C-PACE Loan and complete certain

10 improvements at the Property on or before March 31, 2025. Anderson Dec. at ¶ 15; Exh. J at §§

11 12.1.1.2; 12.1.4.

12　　14.　　Beginning December 1, 2024, Debtor ceased making monthly payments of interest

13 and on February 24, 2025, Debtor was sent a Notice of Events of Default; Reservation of Default

14 Rate; Demand for Payment ("First Demand Letter") which, among other things, informed Debtor of

15 defaults under the terms of the Loan Documents for Debtor's failure to make required payments of

16 interest on December 1, 2024, January 1, 2025 and February 1, 2025. Anderson Dec. at ¶ 16; Exh.

17 K.

18　　15.　　On March 21, 2025, Debtor was sent a Supplemental Notice of Events of Default;

19 Trigger of Cash Management; Acceleration and Demand for Payment ("Second Demand Letter")

20 which, among other things, informed Debtor that in addition to the defaults identified in the First

21 Demand Letter, it was additionally in default for failing to make the payment due on March 1, 2025,

22 and that cash management procedures pursuant to the Cash Management Agreement were triggered.

23 Anderson Dec. at ¶ 17; Exh. L.

24　　16.　　On April 24, 2025, Debtor was sent a Supplemental Notice of Maturity Default;

25 Demand for Payment ("Third Demand Letter") which, among other things, informed Debtor that in

26 addition to the defaults identified in the First Demand Letter, that Debtor was additionally in default

27 under the terms of the Loan Documents by failing to pay the full amounts owed on or before the

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

4

Maturity Date and that the full amounts outstanding under the Loan Documents was due and payable in full. Anderson Dec. at ¶ 18; Exh. M.

17.     On July 23, 2025, Debtor was sent a Notice of Maturity Default; Demand for Payment ("Fourth Demand Letter") which, among other things, noted that Debtor was in default under the terms of the Loan Documents by, among other things, failing to complete certain improvements at the Property on or before March 31, 2025, as required by the Loan Documents; the failure to pay certain assessments as required by the C-PACE Loan; the failure to pay property taxes; and the failure to pay the amounts owed under the Loan on or before the Maturity Date. Anderson Dec. at ¶ 19; Exh. N.

18.     During this period, Debtor and Red Oak began discussions regarding a potential extension of the Maturity Date and for the advancement of additional sums to complete the repairs at the Property. Red Oak engaged in these discussions because it understood that Debtor was in negotiations with an entity called Behavior Frontiers to lease a substantial part of the unleased portion of the Property. Behavior Frontiers backed out of this planned lease, so the parties were unable to agree to any extension of the Loan. Anderson Dec. at ¶ 20.

19.     Given these defaults and the failure of extension discussions, Red Oak initiated a non-judicial foreclosure sale of the Property pursuant to the terms of the Deed of Trust and scheduled a sale for November 13, 2025. Anderson Dec. at ¶ 21.

**D.     The Filing of the Present Case and Cash Collateral Motion.**

20.     On November 12, 2025 ("Petition Date"), and on the eve of the scheduled foreclosure sale, Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). [ECF 1].

21.     Debtor submitted its Cash Collateral Motion on November 17, 2025 [ECF 6] seeking relief including:

A. Use of the Rents from the Petition Date through December 31, 2025, on an interim basis, and through June 30, 2026, on a final basis in accordance with a proposed budget submitted in connection with the Cash Collateral Motion as Exhibit A ("Budget");

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

B. Authorization to pay a property manager owned by an insider of Debtor a 4% management fee, or approximately $3,000-3,200 per month;

C. That Debtor be authorized to operate within a 15% variance on the Budget it proposed;

D. Approval of payments to Red Oak and the C-PACE Lender for adequate protection.

[ECF 6 at ¶¶ 17-21].

22. In the Cash Collateral Motion, Debtor notes that the rents generated from the Property are deposited in its operating account with Citibank, N.A. ending in 7621 (the "<u>Operating Account</u>"). [ECF 6 at ¶ 11].

23. The Budget also shows that the Rents constitute all Debtor's income. [ECF 9 at p. 3].

24. Pursuant to the Loan Documents, regular interest accrues on the Loan each month in the amount of $67,500 for thirty-day months and $69,750 for months with thirty-one days, not including default interest, costs, fees, and other amounts accruing pursuant to the terms of the Loan Documents. Anderson Dec. at ¶ 22.

25. While Debtor claims that the Property has a total market value of $17,720,000.00, Red Oak has an appraisal dated February 21, 2025, showing that the prospective as stabilized value of the Property is $11,300,000.00 ("<u>Red Oak Appraisal</u>"). Anderson Dec. at ¶ 23; Exh. O.

26. Debtor's listing agent additionally also represented that it was "optimistic that pricing could move above $14M" on August 26, 2025, but otherwise disclosed potential offers for the Property ranging from below $12.5 million to $12.5 to $13 million. Anderson Dec. at ¶ 25; Exh. P.

27. Red Oak additionally understands there is $397,411.12 in outstanding property taxes due on the Property. This amount is comprised of 2025 property taxes in the amount of $287,163.80, payable in two installments of $143,581.90 and which will be delinquent on December 10, 2025 and April 10, 2026 respectively, additional secured escape bill taxes in the amount of $16,002.30 which will be delinquent after December 1, 2025, a 2024 Secured Supplemental Bill in the amount of $11,936.02, which is payable in two installments of $5,968.01 and delinquent after December 10, 2025 and April 10, 2026 respectively, and defaulted property taxes in the amount of $82,309.00. Anderson Dec. at ¶ 26; Exh. Q.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

### III.     ARGUMENT

Red Oak objects to the Cash Collateral Motion because Debtor's proposed use of the Rents and its offer of adequate protection fail to safeguard Red Oak's interest from further diminution. Specifically, Red Oak holds a perfected security interest in the cash proceeds from the Rents, yet Debtor's proposed replacement liens, periodic payments, and reliance on an alleged equity cushion do not provide the level of protection required by the Bankruptcy Code. Moreover, any use of Rents should be strictly conditioned on comprehensive financial reporting and meaningful limitations to ensure that the collateral is preserved and not further depleted. At a minimum, adequate protection for Red Oak would require full payment of interest accruing on the Loan, along with robust reporting requirements and other safeguards in any final order authorizing the use of cash collateral.

### A.     Red Oak's Perfected Security Interest in Rents and the Need for Stringent Protections

Red Oak maintains a perfected security interest in the funds in the operating account because they are identifiable cash proceeds of the Rents. Under California law, an assignment of leases and rents is perfected upon recordation. *In re GOCO Realty Fund I*, 151 B.R. 241, 247 (Bankr. N.D. Cal. 1993) (citing Cal. Civ. Code § 2938(a)); see also *Pena v. Manfredo*, 2013 WL 4817581, at \*4 (E.D. Cal. Sept. 6, 2013), aff'd, 582 F. App'x 744 (9th Cir. 2014). A perfected security interest in rents continues to attach to rental payments in a deposit account so long as those funds remain identifiable and traceable. *GOCO Realty Fund I*, 151 B.R. at 250; Cal. Civ. Code §§ 9315(a)(2), (d)(2). Red Oak's security interest in the Rents is established by its recorded Deed of Trust, and the Debtor's own admissions confirm that the Rents are deposited into the operating account and constitute the sole source of Debtor's income. [ECF No. 6 at ¶ 11; No. 9 at Exh. A]. The proceeds are therefore traceable, and Red Oak's security interest remains perfected despite Debtor's contrary claim that the funds in the operating account are unsecured.

To further protect Red Oak's interest, and in accordance with 11 U.S.C. § 363(c)(4), Debtor should be required to segregate the Rents to ensure that cash collateral is not commingled with other assets. This is a well-established safeguard to prevent the dissipation of collateral and to maintain

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

1    the integrity of Red Oak's security interest. *In re Countryside Bowling Ctr., Inc.*, 203 B.R. 765, 766
2    (Bankr. M.D. Fla. 1996) (ordering segregation of cash collateral).

3         Red Oak's perfected security interest in the Rents and their proceeds is established under
4    both the Loan Documents and applicable law. Any use of these funds must be strictly conditioned
5    to prevent further erosion of Red Oak's collateral position. Red Oak's interests will be left vulnerable
6    to ongoing diminution absent these protections and contrary to the fundamental requirements of the
7    Bankruptcy Code.

8              1.       The Proposed Replacement Liens and Payment Fail to Provide Adequate
9                       Protection

10        Debtor's proposed use of cash collateral is fundamentally deficient because the replacement
11   liens and periodic payments it offers do not provide the level of protection required to safeguard Red
12   Oak's secured interest. [ECF 6 at ¶ 21(a)-(b)]. Debtor bears the burden of establishing adequate
13   protection. 11 U.S.C. § 363(p)(1). The Bankruptcy Code mandates that a secured creditor's interest
14   must be protected against any diminution in value during the pendency of a bankruptcy case. *In re*
15   *Scottsdale Medical Pavilion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993). "While the term 'adequate
16   protection' is not defined in the Bankruptcy Code, 11 U.S.C. § 361 sets forth three non-exclusive
17   examples of what may constitute adequate protection: 1) periodic cash payments equivalent to
18   decrease in value; 2) an additional or replacement lien on the other property, or 3) other relief that
19   provides the indubitable equivalent." *Matter of Plaza Fam. P'ship*, 95 B.R. 166, 171 (E.D. Cal. 1989)
20   (quoting *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) in defining "adequate protection" in the
21   context of 11 U.S.C. § 363(c)). Debtor's proposal falls short in several critical respects.

22             2.       Purported Replacement Liens Offer No Additional Security

23        The replacement liens offered by Debtor are illusory. According to the Budget, the only new
24   property or revenue Debtor anticipates receiving during this case is the Rents generated by the
25   Property. *See* Exhibit A at p. 3. However, Red Oak already holds a perfected security interest in both
26   pre- and post-petition Rents by virtue of its recorded Deed of Trust and applicable law. Purported
27   replacement liens on future rents provide no additional protection when those rents are already fully
28

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH
COLLATERAL**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

encumbered. Courts have consistently recognized that a replacement lien on collateral in which the creditor already holds a perfected security interest does not constitute adequate protection. See e.g. *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 566 (B.A.P. 6th Cir. 2010); *Wolf v. FirstMerit Bank, N.A.,* 535 B.R. 772, 780 (N.D. Ill. 2015); *Putnal v. Suntrust Bank*, 489 B.R. 285 (Bankr. M.D. Ga. Mar. 28, 2013). Thus, Debtor's offer of replacement liens fails to satisfy the requirements of 11 U.S.C. § 361.

3.      Proposed Periodic Payments Are Grossly Inadequate

The periodic payments proposed by Debtor are grossly inadequate. Red Oak is entitled to adequate protection payments that, at a minimum, cover the interest accruing on its claim, as well as any amounts accruing on senior obligations such as the C-PACE Loan and outstanding property taxes. Proposed periodic payments do not adequately protect a creditor's interest when they do not prevent the erosion of this equity cushion through accrued interest, fees, and other charges. See *In re Billman*, No. 19-90989-E-7, 2020 WL 3256808, at *5 (Bankr. E.D. Cal. June 12, 2020); *In re Dev., Inc.*, 36 B.R. 998, 1007 (Bankr. D. Haw. 1984); *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993).

The evidence demonstrates that interest alone accrues on Red Oak's claim at a rate of no less than $67,750 per month. Debtor's proposed adequate protection payment of $5,000 - and even the increased interim payment of $30,000 - falls far short of covering this amount, let alone the additional costs, fees, and charges permitted under the Loan Documents and 11 U.S.C. § 506(b).

Moreover, Debtor has failed to disclose the amount of interest accruing on the C-PACE Loan, which is senior in priority to Red Oak's lien, and has not provided for payment of substantial outstanding property taxes. As a result, the proposed payments do not prevent the ongoing erosion of Red Oak's collateral position.

Outstanding property taxes also threaten further erosion. According to Sacramento County tax records, there is a total of $397,411.12 in outstanding property taxes, $82,309.00 of which is currently in default. Anderson Dec. at ¶ 27. The remaining amounts are also likely to become in default during the pendency of this case. A total of $165,552.21 will become delinquent in December

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

of 2025 and the remaining $149,549.91 will become delinquent in April of 2026. Anderson Dec. at ¶ 27. Even if Debtor's full Budget was dedicated just to the payment of operating expenses and property taxes, Debtor would not generate enough revenue to pay both the property taxes coming due and the amounts that are currently delinquent. [*See* ECF 9 at p. 3 (showing that net operating income plus amounts set aside for real estate taxes equals $365,464 through April 1, even without bankruptcy expenses)]. Debtor, therefore, fails to demonstrate that the proposed adequate protection payments address the amounts accruing on Red Oak's claim or on senior interests.

Debtor's proposed replacement liens and periodic payments do not provide the "indubitable equivalent" of Red Oak's secured interest, nor do they prevent the ongoing diminution of collateral value. Without full interest payments, coverage of senior obligations, and meaningful financial safeguards, Red Oak's position will continue to deteriorate. The Court should therefore deny Debtor's request to use cash collateral absent strict conditions that truly protect the interests of secured creditors.

### B. The Alleged Equity Cushion Is Insufficient and Rapidly Declining

Although not specifically identified by Debtor as part of its adequate protection analysis, Debtor suggests that secured creditors are substantially oversecured and protected by an equity cushion. In support of this allegation Debtor presents an appraisal by Curtis-Rosenthal, Inc. dated October 29, 2025 (the "Appraisal") which alleges that the total value of the Property is $17,720,000.00.[1] [ECF 6 at ¶¶ 3-5]. Courts in this circuit have recognized that an equity cushion can provide a secure creditor adequate protection. *See In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). Whether an equity cushion in a particular case provides adequate protection is determined on a case-by-case basis. *In re Holt*, No. 09-62439-13, 2010 WL 3294693, at *6 (Bankr. D. Mont. Aug. 20, 2010). Courts generally find that equity cushions above 20% are sufficient, while lower cushions are subject to greater scrutiny. See e.g. *In re Capitol Station 65*, LLC, No. 17-23627-B-11, 2018 WL 333863, at *11 (Bankr. E.D. Cal. Jan. 8, 2018) (compiling cases); *Holt*, 2010 WL3294693, at *6

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[1] The Appraisal distinguishes between the building located at 2 Scripps Drive, Sacramento California and an adjoining vacant lot. [ECF 6 at ¶¶ 3; 5]. However, the Property is a single parcel so Red Oak discusses the total appraised value set forth in the Appraisal.

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

(compiling cases and noting that an equity cushion below 12% is "rarely adequate."). Additionally, a creditor is not adequately protected when its equity cushion is eroded by the accrual of interest and other costs and fees. *Billman*, 2020 WL 3256808, at *5 ("While Movant estimates that there is a 9.11% equity cushion, the court agrees with Movant that this equity cushion is quickly declining due to the accrual of interests, fees, and ad valorem real estate property taxes . . .") see also *In re Butts Farming Ass'n*, No. 83-05174, 1986 WL 713552, at *2 (Bankr. D.N.D. Jan. 7, 1986) (citing *In re Carson*, 34 B.R. 502, 506 (Bankr.D.Kan.1983)).

Debtor fails to establish a sufficient equity cushion to provide adequate protection because (1) the Appraisal relies on materially false assumptions regarding the condition of the Property, the occupancy rate, and the amount of rents generated; and (2) a more realistic valuation between the Appraisal and Red Oak Appraisal, and more in line with pre-petition offers for the Property, demonstrates that the equity cushion is insufficient and continuing to deteriorate.

1.     The Appraisal's Flawed Assumptions Render Its Valuation Unreliable

Debtor fails to carry its burden to show Red Oak is adequately protected by an equity cushion because the Appraisal does not describe the value of the Property in its present condition and instead assumes, among other things, (1) the repairs at the Property are complete; (2) the Property is fully leased; and (3) there are no rent concessions provided to tenants.

First, the Appraisal fails to show the value of the Property in its present condition because it is premised on the assumption that the renovations are complete. The Appraisal states that repairs to the Property were completed in 2022. [ECF 9 at p. 87]. The General Assumptions and Limiting Conditions also state that "[a]ny proposed improvements are assumed to have been completed against otherwise stipulated." [ECF 9 at p. 114]. Debtor, however, admits in the Cash Collateral Motion that "[a]pproximately 6,000 square feet are still unrenovated, with an estimated cost to complete of $500,000-$600,000." [ECF 6 at ¶ 7]. These 6,000 square feet represent almost 17% of the total rentable space described in the Appraisal. [ECF 9 at p. 86]. Given that the renovations at the Property are incomplete, the Appraisal does not describe the current condition and value of the Property and cannot accurately establish any existing equity cushion.

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

Second, the Appraisal miscalculates the value of the Property by understating its vacancies and overstating its revenue generation. When calculating the value of the Property under the income capitalization approach, the Appraisal (1) estimated the Property's gross rental income; (2) multiplied the estimated gross rental income by a percentage of expected losses due to vacancy and non-collectable portions of the total rent ("Vacancy Factor") to determine the net operating income; and then (3) divided the Property's net operating income by a capitalization rate of 5.25% to generate an estimated market price. [ECF 9 at p. 70]. [2] Under this approach, the Appraisal estimated the net operating income for the Property at $900,574, based on estimated gross rents of $1,234,928 per year and a Vacancy Factor of 5%. [ECF 9 at p. 94]. The Appraisal then divided the estimated net operating income of $900,574 by the capitalization rate of 5.25% to come to a market value of $17,153,790, which was rounded down to $17,150,000. *Id.* The Vacancy Factor utilized by the Appraisal, however, is premised on the incorrect assumption that the Property was essentially fully leased. While the Appraisal notes that the average Vacancy Factor for the overall market is 11.3%, it used a Vacancy Factor of 5% for the Property due to its "strong operating history" and "lower vacancy than the market." [ECF 9 at p. 90]. Indeed, the Appraisal assumed that only *0.79%* of rentable square footage was vacant. [ECF 9 at p. 86]. Debtor, however, acknowledges that the Property is approximately 80% leased. [*See* ECF 6 at ¶¶ 4; 9]. This 20% vacancy is *over twenty-five times higher* than the amount assumed in the Appraisal and almost double the average Vacancy Factor for the market, even before any further adjustment to reflect other non-collectable amounts. The Appraisal provides no justification for assuming a Vacancy Factor substantially below market, particularly when the Property is approximately 20% vacant. The Appraisal, therefore, underestimates the Vacancy Factor and overestimates the Property's value.

---

[2]     Red Oak primarily analyzes the Appraisal's calculation of the value of the Property under the income capitalization approach because Debtor relies on this valuation for purposes of the Cash Collateral Motion. *Compare* ECF 6 at ¶ 3 *with* ECF 9 at p. 95. However, these critiques are equally applicable to the Appraisal's use of the sales comparison approach because the Appraisal only looked to sales of properties in good condition and made no adjustments to reflect the fact that construction at the Property is incomplete. [*See* ECF 9 at p. 67]. The sales comparison approach utilized in the Appraisal also looked to the number of tenants at the time of sale, so the understatement of vacancies impacted this analysis as well. *Id.* at p. 66.

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Finally, the Appraisal did not factor in rent concessions in its valuation. The estimated income for the Property provided in the Appraisal is substantially similar to the Debtor's top-line prediction of rent revenues in the Budget. *Compare* ECF 9 at p. 3 (estimating maximum rental income at $105,359 prior to any rent concessions) *with* ECF 9 at p. 94 (estimating income at $1,234,928 per year, or 102,910.66 per month). The Budget demonstrates that Debtor projects that rent revenues will be reduced by approximately 10-21% by rent concessions, and that its gross revenue will range from $77,364 to $82,434. [ECF 9 at p. 3]. The Appraisal does not discuss rent concessions in its analysis, and a comparison of the gross revenue assumed by the Appraisal and the gross revenue projected by Debtor demonstrates that net operating income provided in the Appraisal did not factor in rent concessions. The net operating income for the Property in the Appraisal, therefore, was significantly overstated.

The Appraisal fails to establish that the Property provides an equity cushion because it does not estimate the value of the Property in its current condition. Instead, it provides an estimated value for the Property in a world where (1) all construction at the Property is complete (2) the Property is fully occupied; and (3) tenants pay full rent with no concessions. As Debtor admits in the Cash Collateral Motion, this world does not currently exist. The Appraisal fails to carry Debtor's burden to show that there is an equity cushion that adequately protects Red Oak's interests in the Property's present condition.

2.    More Realistic Valuation Demonstrates a Diminishing and Insufficient Equity Cushion

Moreover, Red Oak is not adequately protected because a more realistic valuation of the Property demonstrates that only a minimal equity cushion exists - and that cushion is rapidly diminishing. If the Property is valued at $14 million, a figure that represents a midpoint between the competing appraisals and reflects the amount Debtor's own listing agent was "optimistic" to achieve just a few months ago, and if the equity cushion is calculated based on the total amount of secured claims alleged by Debtor ($10,961,939 for Red Oak and $1,858,513.70 for C-PACE Lender for a total secured claim amount of $12,820,452.70) and the outstanding tax liabilities ($397,411.12), the

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

1  resulting equity above these claims would be only $782,136.18. This equates to an equity cushion

2  of approximately 5.59%.

3          This already modest cushion is further eroded by Debtor's proposed adequate protection

4  payments which are insufficient to cover the interest and other amounts accruing each month, and

5  do not address the accrual of amounts owed to the C-PACE Lender, whose claim is senior in priority.

6  As a result, any remaining equity cushion will continue to decline over the course of this case.

7  Accordingly, Red Oak lacks adequate protection because the small equity cushion that does exist is

8  subject to ongoing and accelerating diminution under Debtor's proposed use of the Rents.

9      **C.     Adequate Protection Requires Increased Payments and Robust Financial**

10             **Controls**

11         Debtor's lack of financial transparency significantly increases the risk to Red Oak and other

12  secured creditors if further use of cash collateral is permitted. The record demonstrates that Debtor

13  has failed to provide clear, consistent, and comprehensive financial information regarding the use of

14  rents and the overall financial condition of the Property. For example, despite representing that only

15  $500,000 in repairs remained as of February 2025, Debtor has not accounted for how rental income

16  - purportedly in excess of $77,000 per month - was utilized, especially given that no payments were

17  made to lenders during this period and repairs remain incomplete. *See* Anderson Decl. Exhibit O at

18  p. 3. Nor does Debtor explain why its estimates are now correct when it previously miscalculated –

19  twice - the time and expense necessary to complete renovations at the Property when it took out the

20  Loan from Original Lender and the C-PACE Loan. [ECF 6 at ¶ 7]. This lack of clarity raises serious

21  concerns about the accuracy of Debtor's projections and the reliability of its proposed budget.

22         Thus, any approval of Debtor's use of cash collateral should at minimum:

23         a.  Provide monthly cash payments in the amount equal to the interest accruing
24             on the Loan;

25         b.  Require Debtor to provide a timeline for the anticipated completion of the
               proposed renovations to the Property, including milestones that the Debtor
26             will reach during the pendency of this case (the "Construction Timeline");

27         c.  Require Debtor to provide monthly financial reporting including (i) operating
               reports, including income and expense statements; (ii) profit and loss
28             statements; (iii) bank statements so Red Oak can monitor the use of the Rents

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

14

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH
COLLATERAL**

to confirm compliance with the Budget and any final order; and (iv) reports demonstrating the progress of the renovations and compliance with the milestones set forth in the Construction Timeline;

d. Provide that any permissible variance from the Budget be limited to 10%.

Absent these provisions, there is a risk that Debtor's history will repeat and the requested time and money to complete renovations will again be insufficient. At the same time, the amounts owed to Red Oak, and the senior obligations represented by the C-PACE Loan and outstanding property taxes will continue to accrue and erode any equity cushion that exists in the Property. Such a scenario would leave Red Oak in a substantially worse position than if it were permitted to foreclose on its Collateral. This is the precise situation that adequate protection is meant to remedy. *See*, *e.g. In re 354 E. 66th St. Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995) ("The purpose or intent of granting adequate protection payments are to maintain the status quo for that creditor and to protect the creditor from diminution or loss of the value of its collateral during the ongoing Chapter 11 case.").

Without robust, ongoing financial reporting - including monthly operating reports, profit and loss statements, bank statements, and construction progress updates - there is no effective way to monitor compliance with the budget or ensure that funds are being used to preserve, rather than dissipate, the value of the collateral. This deficiency, combined with Debtor's history of missed deadlines and budget overruns, leaves Red Oak's collateral position exposed to further erosion. Accordingly, any continued use of cash collateral should be conditioned on strict financial reporting and oversight, or otherwise denied, to protect the interests of secured creditors.

## IV. RESERVATION OF RIGHTS

Nothing in this objection is intended to be or should be considered an acceptance of the valuations of the Property submitted by Debtor or acceptance of Debtor's characterization of Red Oak's claim. Red Oak reserves the right to challenge such valuations or conduct appraisals of its own to accurately determine the value of its Collateral.

Red Oak has also not yet seen a draft of the proposed Final Order for the Cash Collateral Motion. As a result, Red Oak may have additional objections based on the language of such order and reserves the right to make these further objections.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**

## V.    CONCLUSION

WHEREFORE, Red Oak respectfully requests that (i) the Court deny Debtor's continued use of cash collateral and require Debtor to segregate the Rents from any other funds it may receive; (ii) that in the alternative, the Court grant the use of cash collateral on the conditions set forth in Section IV above; and (iii) for such other relief as the Court deems just and proper.

Dated:  December 2, 2025                    Respectfully submitted,


                                           By: _/s/ Sharon Z. Weiss_____
                                               Sharon Z. Weiss
                                               William J. Easley (Pro Hac Vice forthcoming)
                                               Attorneys for ROIOF SERIES, a series of RED
                                               OAK CAPITAL FUND SERIES, LLC

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

16

**ROIOF SERIES' OBJECTION TO SCRIPPS TWO, LLC'S MOTION TO USE CASH COLLATERAL**