**8**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone: (916) 485-1111
Facsimile: (916) 485-1111

Proposed Attorney for SCRIPPS TWO, LLC

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>SCRIPPS TWO, LLC<br><br>TAX ID / EIN: 92-0622957<br><br>Debtor-in-Possession. | Case No. 2025-26371-A-11<br>Chapter 11<br>DCN: GEL-1<br><br>Date: December 15, 2025<br>Time: 9:00 a.m.<br>Location: 501 I Street, 7th floor,<br>           Courtroom 28;<br>           Sacramento, CA<br><br>Judge: Honorable Frederick E. Clement |

**DECLARATION OF RANDALL BLAESI IN SUPPORT OF DEBTOR'S REPLY TO ROIOF SERIES, A SERIES OF RED OAK CAPITAL FUND SERIES, LLC's OBJECTION TO DEBTOR'S MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

I, Randall Blaesi, do hereby declare:

1. My name is Randall Blaesi and I am a certified and licensed California Real Estate Appraiser. My Office of Real Estate Appraisers identification number is AG008581.

2. I have no connections with or interests in the property that I appraised at 2 Scripps Drive, Sacramento, CA 95825 (the "Subject Property"). A true and accurate copy of the Appraisal Report is attached hereto as **Exhibit E.**

3. The appraisal I conducted conforms to the Uniform Standards of Professional Appraisal

Practice (USPAP), the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute, and applicable state appraisal regulations. The appraisal is also prepared in accordance with the appraisal regulations issued in connection with the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).

4. The USPAP is a set of guidelines and standards that MAI professional appraisers in the United States must follow when conducting appraisals. The USPAP is developed and maintained by the Appraisal Standards Board (ASB) of the Appraisal Foundation, which is responsible for promoting professionalism and uniformity in the appraisal industry. The USPAP are updated periodically to reflect changes in the industry and to ensure that the standards remain relevant and effective. The USPAP is recognized as the industry standard for real estate appraisal in the United States.

5. USPAP Standards Rule 2-2 (Content of a Real Property Appraisal Report) requires each written real property appraisal report to be prepared as either an Appraisal Report or a Restricted Appraisal Report. My appraisal report is prepared as an Appraisal Report as defined by USPAP under Standards Rule 2-2, and incorporates practical explanation of the data, reasoning, and analysis that were used to develop the opinion of value.

6. While the type and extent of the research and analysis conducted are detailed in the individual sections of my appraisal and the corresponding testimony set forth below, my opinion is based on my physical inspection of the subject property, the physical features of the subject property, surveys of relevant market data and indicators, and my expertise and training in valuation methodologies.

7. There are three approaches to value typically considered when developing a market value

opinion for real property, and I utilized two of three approaches to value including the Cost Approach and the Sales Comparison Approach but not the Income Capitalization Approach in arriving at my opinion of value of the Subject Property.

**Assumptions and Conditions**

8. Assumptions and conditions are important elements in a real estate appraisal conducted under USPAP standards. They are used to define the scope of the appraisal, establish the context in which it is performed, and ensure that the appraisal is reliable and credible. Under the Appraisal Institute guidelines, the identification of assumption and hypothetical conditions is part of problem identification, which typically precedes scope of work determination. Assumptions and conditions are defined in Standard 2 of the USPAP, which focuses on real property appraisal reporting.

9. Within Standard 2, specifically in section Standard Rule 2-2, appraisers are required to identify and disclose any assumptions and hypothetical conditions used in the appraisal. These assumptions and conditions may impact the appraiser's analyses, conclusions, or opinions. My appraisal includes assumptions and conditions on page 4 of the Appraisal.

10. Assumptions are suppositions that are assumed to be true for the purposes of the appraisal, but are not verified or confirmed. In some cases an assumption is required because the truth is simply not knowable at the time the appraisal or review is prepared. In other cases, the scope of work, even though determined to be appropriate for the assignment, does not permit the truth about the condition to be known.

11. The USPAP requires appraisers to identify extraordinary assumptions made in the appraisal process, but distinguishing them from standard assumptions relies on my experience and expertise. Standard assumptions are those a reasonable market participant would commonly make

in a similar scenario, based on common knowledge, past experiences, and generally accepted practices.

12.  In the sales comparison method, a property's value is determined by comparing it to similar properties that have recently sold. This method uses the Sales Comparison Approach, which involves a comparison of the subject property with other properties which have been sold or have been offered for sale in the open, competitive market and takes into account market conditions, location, exposure, size and quality/condition. By considering these factors, the sales comparison approach ensures that the property's value reflects the current market environment.

13. As opposed to assumptions, conditions are specific circumstances or requirements that impact the appraisal process or the validity of the appraisal's conclusions. For example, my report states the typical standard condition that information, estimates and opinions contained in my report and obtained from third-party sources are assumed to be reliable and have not been independently verified, namely the Regional Description and Market Overview.

14. Hypothetical conditions are circumstances that are contrary to what currently exists but are assumed to be true for the purpose of the appraisal. My appraisal is subject to hypothetical conditions.

**Analysis of Subject Property**

15. Property analysis plays a critical role in the appraisal of real estate. A comprehensive property analysis helps the appraiser under the features and characteristics of the building and the land on which it is situated. The property analysis typically includes a review of the physical characteristics of the property, such as size, age, condition, quality, improvements and lot size.

**Valuation Generally**

16. For the Subject Property, I utilized the sales comparison approach and income capitalization approach, which I will discuss more fully shortly.

**Sales Comparison Approach**

17. The sales comparison approach involves comparing the subject property to similar properties that have recently been sold. The sales comparison is relatively straightforward.

18. First, I gather data on recently sold properties that are similar to the Subject Property. These properties, known as comparables or comps, are chosen for their similar characteristics such as location, size, condition, age, amenities, and features.

19. Second, I analyze the comparables and make adjustments to account for any differences between the properties. Adjustments can be made based on differences in the clubhouse, the characteristics of the course, or other features.

20. After making the necessary adjustments, I arrive at the value estimate for the subject property based on the adjusted sale price of the comparables.

<u>Comparables</u>

21. I initially identified five comparables from the area. All sales are located in similar market areas, and all are fairly recent sales, from sale data from January 2023 through October 2025, with similar property types (medical and dental offices) between 5,000 to 20,000 square feet.

22. Sale No. 1 - 3071 Gold Canal Drive, Rancho Cordova, CA 95670. This is a recent purchase of a 2006-built, Class D - Wood Frame, office building. This building is 11,136 sf. This building was reportedly in good overall condition at the time of sale. The transaction was reportedly all cash to the seller. The cap rate was reported at 5.35%. After adjustments, the sale indicates a value for the subject of $499.62 per square foot of building area.

23. Sale No. 2 - 4320 Auburn Blvd., Sacramento, CA 95841. This is a recent purchase of a 1984-built, Class D - Wood Frame, office building. This building is 19,559 sf. This building was reportedly in good overall condition at the time of sale. The transaction was reportedly all cash to

the seller. After adjustments, the sale indicates a value for the subject of $548.34 per square foot of building area.

24. Sale No. 3 - 9250 Big Horn Blvd., Elk Gove, CA 95758. This is a recent purchase of a 2019-built, Class D - Wood Frame, office building. This building is 12,695 sf. This building was reportedly in good overall condition at the time of sale. The transaction was reportedly all cash to the seller. After adjustments, the sale indicates a value for the subject of $450.77 per square foot of building area.

25. Sale No. 4 - 2170 E. Bidwell Street, Folsom, CA 95630. This is a recent purchase of a 2005-built, Class D - Wood Frame, office building. This building is 3,453 sf. This building was reportedly in good overall condition at the time of sale. The transaction was reportedly all cash to the seller. After adjustments, the sale indicates a value for the subject of $451.78 per square foot of building area.

26. Sale No. 5 - 9309 Office Park Circle, Elk Gove, CA 95758. This is a recent purchase of a 2004-built, Class D - Wood Frame, office building. This building is 6,937 sf. This building was reportedly in good overall condition at the time of sale. The transaction was reportedly all cash to the seller. The cap rate was reported at 6.92%. After adjustments, the sale indicates a value for the subject of $454.45 per square foot of building area.

27. The comparable improved sales data reported indicate an adjusted range as illustrated above. The average sale price was $480.99 per square foot of building area. The median sale price was $454.45 per square foot of building area. Based on the subject properties location, quality, age of improvements and other characteristics, it is considered that the value range for the subject would reflect a more narrowed range of per unit value within the adjusted comparable range, or $470 to $490 per square foot of building area.

28. After adjusting for exposure, property size (35,589 square feet), features and quality, the

indicated value of the sales comparison approach is $17,080,000.

**Income Capitalization Approach**

29. This approach is widely applied in appraising income-producing properties. Anticipated present and future income, as well as any future reversions, is discounted to the present value through capitalization. This approach relies upon market data to establish current economic rents and expense levels to arrive at an expected net income.

30. The subject property rents are generally in line with the market. The vacant unit at suite 101 was assigned a rent of $3.00/sf/month for the proforma. Due to the strong operating history of the subject property, I utilized contract rents for our analysis, except as noted for suite 101. The total annual rent would be $102,307, including suite 101 at $3.00/sf/month. Then, $102,307 / 36,109 sf = $2.83/sf/month. In the proforma, we utilize a rounded amount of $2.85/sf/month.

31. Based on the data and analysis presented, it is my opinion that the following value is i indicated for the subject property according to the Income Capitalization Approach is $17,150,000.00.

**Cost-to-Cure Adjustment**

32. I have taken into consideration and deductions necessary for the office space with a pending lease, for 6,535 square feet to be leased (Suite 110). Based on a rate of $17,317 per month, over 12 months, loss rent revenue would be $207,799.00. Minus leasing commission fees of 5% of totals would be $51,950.00. Tenant improvement costs at $92.00 a square foot at 6,535 sq. ft would be $601,179. The total deduction would be $860,927. The deduction for the lease-up is rounded to $860,000.

**Reconciliation and Conclusion of Value**

33. The sales comparison approach indicates a value of $17,080,000, not including the market value of $600,000 for the entitled vacant land.

34. The income capitalization approach indicates a value of $17,150,000, not including the market value of $600,000 for the entitled vacant land.

35. The market value is $600,000 for the entitled vacant land by the Sales Comparison Approach.

36. The conclusion of market value, before the COST-TO-CURE (LEASE UP ANALYSIS) is $17,120,000. The deduction for the lease-up is $860,000. The FINAL market value after lease-up is $16,260,000 plus $600,000 for the entitled vacant land.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed on December 8, 2025.

 /s/ Randall Blaesi
     Randall Blaesi