**5**

**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman, SBN 303010
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone & Fax: (916) 485-1111
E-mail: Gabe@4851111.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In Re:<br><br>SCRIPPS TWO, LLC<br><br>FEIN: 92-0622957<br><br>     Debtor. | Case No. 2025-26371<br><br>DCN: GEL-4<br><br>[NO HEARING REQUESTED]<br><br>Place:    United States Bankruptcy Court<br>            Courtroom 13, Fifth Floor,<br>            2500 Tulare Street,<br>            Fresno, California<br><br>Judge:    Honorable René Lastreto II |

**EXHIBITS IN SUPPORT OF EXPARTE MOTION TO EMPLOY PALMER CAPITAL INC. AS REAL ESTATE BROKER**

| EXHIBIT NO. | DESCRIPTION | PAGES |
|:---:|:---:|:---:|
| 1 | LISTING AGREEMENT | 3 |

- 1 -

# EXHIBIT "1"

Filed 03/25/26      Case 25-26371      Doc 84

# PALMER CAPITAL INC

## EXCLUSIVE AUTHORIZATION TO SELL
## AND COMMISSION AGREEMENT

Dated for reference purposes only as March 17, 2026

1. **LISTING TERMS:** The undersigned owner (**"Owner"**) hereby employs and grants **PALMER CAPITAL INC.** (**"Broker"**) the exclusive and irrevocable right to sell or exchange the medical office building known as Campus Commons Medical (**"Property"**) for a period commencing upon the mutual execution of this Exclusive Authorization To Sell And Commission Agreement (**"Agreement"**) and terminating on the later of six months from the mutual execution hereof or the date the offering memorandum is submitted to market by Broker (**"Term"**). The Property is situated in the City of Sacramento, County of Sacramento, State of California and is more particularly described as:
**Campus Commons Medical**
**2 Scripps Drive**
**Sacramento, CA**
**APN #295-0384-001**

2. **COMMISSION:** Owner agrees to pay Broker, upon the closing of the purchase and sale of the Property, a commission calculated based upon the gross sales purchase price of the Property (**"Commission"**) equal to two and a half percent (2.50%). Owner further agrees to pay Broker an additional amount of ten thousand dollars ($10,000.00) as a Marketing Expense Fee (**"Marketing Expense Fee"**) at the time of a successful closing. If the marketing effort doesn't produce a transaction, there is no marketing expense fee due to broker.

   This Commission shall be earned and paid for services rendered if, during the Term, a purchaser is procured by Broker, Owner, or anyone else at a price and on terms agreeable to Owner in its sole discretion. In the event that any broker other than Broker represents a purchaser, the purchaser shall be solely responsible for the compensation of purchaser's broker and Broker shall make sure that such terms are specifically included in any negotiations Broker has with such party. Neither Broker nor Owner shall be responsible for any commission payable to purchaser's broker. The foregoing Commission structure shall be paid at the closing and recording of the deed transferring title to the Property to such third party. Broker may submit this Agreement to the closing agent who may be closing on the sale of the Property as instructions to compensate Broker for the Commission due Broker out of Owner's sales proceeds.

   In the event of any dispute regarding the payment of any Commission under this Agreement, the prevailing party shall be entitled to reasonable and actual attorneys' fees and costs incurred.

3. **BROKER NEGOTIATIONS:** Upon termination of this Agreement, Broker shall have the right to finalize its negotiations with prospective buyers engaged during the Term. Upon completion of those negotiations with said prospective buyer that result in a purchase and sale of the Property, Owner shall pay Broker the Commission obligation referenced in Paragraph 2 of this Agreement.

4. **OWNER-BROKER COOPERATION:** Broker agrees to diligently market the Property for sale during the Term. Owner agrees to cooperate with Broker in bringing about a sale of the Property and to refer to Broker all inquiries of anyone interested in the Property. Owner and/or its counsel shall be responsible for determining the legal sufficiency of a purchase and sale agreement or other documents relating to any transaction contemplated by this Agreement. Broker does not provide any legal or tax advice.

1

# PALMER CAPITAL INC

5. **CONDITION OF PROPERTY DISCLOSURE:** Owner agrees to disclose to Broker and to prospective purchasers all information which Owner has regarding the Property. Broker shall not independently verify the truthfulness of the information provided by Owner, and shall not be responsible for any errors therein. Broker is not a guarantor or warrantor of any information regarding the Property provided by Owner or endorsed by Owner.

6. **BROKER DISCLOSURE:** Owner acknowledges and agrees that Broker may represent, through listing agreements, debt assignments or otherwise, various parties including prospective purchasers of the Property or owners of properties having the same or similar qualities and characteristics of the Property and parties having security interests in the Property. Owner desires that the Property be presented to such prospective purchasers and other parties. Owner consents to any dual agency or competitive relationship that may be created by Broker.

7. **OWNER AUTHORITY, DISCLOSURE AND FIRPTA:** Owner represents that: (a) it is the owner of the Property; (b) it has the authority to enter into this Agreement and to sell the Property on the terms set forth herein; (c) no other persons or entities have title to the Property; and (d) the undersigned individual, signing on behalf of the Owner, has the authority to sign this Agreement. No person or entity who has an ownership interest in the Property is a foreign person as defined in the Foreign Investment in Real Property Tax Act (the **"Act"**). Owner shall furnish to the purchaser through escrow a certificate executed by the Owner stating, under penalty of perjury, the Owner's United States taxpayer identification number and that the Owner is not a foreign person under the Act.

8. **BROKER/OWNER INDEMNITY:** Broker agrees to indemnify, defend and hold harmless Owner from and against all liabilities resulting from Broker's intentional: (1) breach of this Agreement or (2) misrepresentation or failure to provide information which a prospective buyer asserts negatively impacts the value of the Property. Owner agrees to indemnify, defend, and hold harmless Broker from and against all liabilities resulting from Owner's intentional: (1) breach of this Agreement or (2) misrepresentation or failure to provide information which a prospective buyer asserts negatively impacts the value of the Property. This section shall survive the Term or earlier termination of this Agreement.

9. **RECEIPT ACKNOWLEDGMENT:** The undersigned Owner and Broker hereby acknowledge receipt of a copy of this Agreement. This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written. This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of Owner and Broker.

**BROKER:**                                                          **OWNER:**
**Palmer Capital Inc**

2

# PALMER CAPITAL INC

By: _____

      Mark Palmer, Managing Partner

Date:   3/10/2°

By: _____

      Bill Palmer, Designated Broker

Date:    3-18-26

By: _____

Date:    3-17-26